**Wayne E. FENTON, Relator,**

v.

**MURPHY MOTOR FREIGHT LINES, INC., Self–Insured, Respondent,**

**and**

**Central States, Southeast and Southwest Areas, Health and Welfare Fund, Intervenor, Respondent.**

No. 51037.

Supreme Court of Minnesota.

Sept. 5, 1980.

Rehearing Denied Oct. 15, 1980.

---

Kelly, Torrison & O'Neill, St. Paul, for relator.

Maurice C. Lizee, Minneapolis, for Murphy Motor Freight Lines, Inc.

Robins, Davis & Lyons and John G. Brian, III, St. Paul, for Central States.

YETKA, Justice.

Certiorari to review a decision of a divided Workers' Compensation Court of Appeals denying employee compensation upon findings that his temporary total disability and a 35% permanent partial disability of his left leg are not causally related to his employment. Having concluded that these findings lack substantial credible evidentiary support and that the compensation judge's contrary determination has substantial support in the record as a whole, we reverse the Court of Appeals' decision and direct reinstatement of the compensation judge's findings and determination.

Employee, who is 49 years of age, worked as a truckdriver for the employer from 1966 until December 17, 1977, except for minor interruptions. He ordinarily worked five 10–hour workdays each week on hauls averaging 400 to 500 miles. A big man, six feet two inches tall and weighing 350 pounds, he found the small size of the truck cabs required him to assume cramped, confined positions. He was also subjected to considerable vibration due both to truck design and to road conditions.

In June 1977 employee consulted his physician, Dr. Frank Milnar, with complaints of stiffness in his heels and the back of his legs which the doctor thought might be due to fibrositis. In July employee began driving a tractor with an oscillating driver's seat which he said required him to turn his body so that he placed his weight on his left buttock while driving. By the end of July he began to notice pain in his left hip. It became progressively worse and he consulted Dr. Milnar on October 3, 1977. Dr. Milnar took x–rays and found that employee had marked osteoarthritis of the hip. He prescribed a pain reliever, but employee returned a few weeks later complaining of pain so severe that he could not sleep. Dr. Milnar then referred him to Dr. Lyle Johnson, an orthopedist, who agreed that employee had degenerative joint disease of the left hip but said surgery should not be performed until he lost weight. Employee was subsequently hospitalized on December 18, 1977, because of a state of anxiety which he has not claimed to be work related. That condition improved after rest and medication, but on January 11, 1978, Dr. Milnar advised him to stop working because the doctor felt that neither employee's pain nor his anxiety condition could otherwise be controlled. Employee then filed a claim seeking compensation for both permanent total disability and a permanent partial disability of his left leg, in response to which the employer denied that his disabilities were causally related to his employment.

At the compensation hearing the medical witnesses agreed that employee had degenerative arthritis in his hip and that the condition had been present for many years. Dr. Milnar said, however, that primary degenerative joint disease, which comes on slowly as a result of "wear and tear," does not usually cause advanced deformity or degeneration in a person under 50 and expressed the opinion that employee's arthritis was secondary, resulting from chronic trauma. Dr. Milnar thought truckdriving conducive to chronic subtle trauma because the vibrations encountered by the driver eventually wear the cartilage in the hip, resulting in bone rubbing against bone and an attempt by the body to form new bone. He expressed the opinion that employee's duties aggravated his disease, particularly after his transfer to the cab with the oscillating seat, and were a substantial cause of the aggravation of his condition because his being required to sit on his left buttock and the vibrations he experienced while driving had aggravated the hip condition more than these factors would have done for a man who was of normal size. The doctor also expressed the opinions that employee is presently permanently totally disabled, has a 50% permanent partial disability of the leg, and cannot return to truckdriving even if he were to lose weight and receive a hip replacement.

Dr. William P. Ferraraccio, an orthopedic surgeon, also expressed the opinion that employee's employment duties had definitely aggravated his underlying condition. Dr. Ferraraccio said that activity was an important factor in exacerbating symptoms and that, since employee's arthritis became symptomatic shortly after he began using the oscillating seat, the temporal relationship between the change of cabs and the onset of employee's symptoms suggested to him that they were related. He agreed that employee's weight was a factor which would also probably aggravate his condition and felt that weight control would be important in his future condition, but said that employee's anatomical changes were permanent and would likely be progressive. He thought employee might require hip replacement at some point and expressed the opinion that he has a 35% permanent partial disability of his left leg as a result of his hip impairment.

It is clear that the testimony of these witnesses lends no support to the Court of Appeals' findings and substantially supports the compensation judge's findings that employee sustained a personal injury in the nature of an aggravation of his preexisting arthritic condition and that, as a result of that aggravation, he has a 35% permanent partial disability of the left leg and is temporarily totally disabled. Nor does the opinion of the remaining medical witness, Dr. Vincent E. Eilers, furnish a basis for the Court of Appeals' determination that there is no causal relationship between employee's disabilities and his employment. Dr. Eilers, a board–certified orthopedist, agreed with the other doctors' diagnosis and did not express the opinion that employee's work had not contributed to aggravate his underlying condition. He expressed a positive view that employee's overweight severely aggravated his condition and said that weight reduction would result in significant relief of his symptoms. He said also that the arthritic process tends to worsen no matter what a person with the disease does and that stress is put upon a hip joint from ordinary walking motions. He agreed also, however, that employee's work could have aggravated his disease by placing stress on his hip joint. The witness agreed that, although there are exceptions, generally persons leading an active life have a more rapid development in the degenerative process than those leading a more sedentary one. He admitted also that the vibrations encountered by employee in driving "certainly would be consistent with the symptoms" and, when asked if a continuing series of physical stresses such as microtrauma from vibration could have aggravated employee's arthritic condition, said that it was a "theoretical situation that is hard to say yes or no to."

In reviewing this testimony we are mindful that we repeatedly have said that it is the function of the Court of Appeals to resolve conflicts in medical opinions and that we will not substitute our judgment for that of the trier of fact. *Hough v. Drevdahl & Son Co.*, 281 N.W.2d 690 (Minn. 1979) (per curiam.) In our view, however, Dr. Eilers' testimony was not in conflict with the other witness' opinions. He did not unequivocally express the opinion that employee's work had not aggravated his underlying condition and conceded that it might have done so. In effect, his testimony does not furnish substantial credible evidence in support of the findings that employee's present disabilities are not causally related to his employment duties. In contrast, the positive opinions of the other medical experts furnish such support for the contrary determination of the compensation judge. Consequently, we reverse the decision of the Court of Appeals and direct that the findings and determination of the compensation judge be reinstated.

We add, however, that we believe employee, although now totally disabled from obtaining gainful employment, has an obligation to cooperate with his doctor's directions to achieve weight reduction and thereby improve his condition to the point where employment in another field, possibly after retraining, will be feasible.

Employee is awarded $400 attorneys fees in this court.

Reversed and remanded with directions to reinstate the findings and determination of the compensation judge.